**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**LORENZO M. ROLANDO,**

      **Plaintiff,**

**vs.**                                            **Civ. No. 01-1054 LH/RLP**

**JO ANNE B. BARNHART,**
**Commissioner of the Social**
**Security Administration,**

      **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

### I. Summary of the Facts

1.     Plaintiff, Lorenzo M. Rolando ("Plaintiff" herein), was in the military service from October 1967 to July 8, 1969. (Tr. 95). He was wounded while on duty in Viet Nam. (Tr. 133, 140-147). Upon discharge from the service he was given a 50% disability rating by the Veterans' Administration due to loss of his left eye (40%) (Tr. 32, 137-138) and neurosis (10%). (Plaintiff's Memorandum in Support of Motion to Reverse and Remand for a Rehearing, Doc. No. 10, Ex. A, pp. 4 & 11)[2].

2.     Plaintiff had a series of jobs from 1970 to January 15, 1986, the longest of which lasted approximately two years. (Tr. 67, 127, 113, 79). He testified that he stopped working in 1986 because of anger, depression, flashbacks, and an inability to be around people. (Tr. 33-34). His

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2]Plaintiff has attached to his Memorandum several documents that had previously been presented to the ALJ, but were not included in the Administrative Record. (See Tr. 113, 131). Defendant has not objected to the consideration of these documents.

insured status for disability insurance benefits expired on March 31, 1989.  (Tr. 113, 124).

3.      Plaintiff went to work as a laborer in November 1997  for Value Rite Manufacturing.  He was promoted to shop foreman after three months.  (Tr. 127, 50-51).  Plaintiff was paid $17.00 per hour at this job, earning $4,045.09 for two months of work in 1997, and $28, 851.43 for eleven months of work in 1988.  (Tr. 51, 116)  He was fired in November 1998. (Tr. 35, 52).  He wasn't given a reason for the firing, but believes it was because of his attitude.[3]  (Tr. 52).

4.      From January 1999 to June 1999 Plaintiff worked as a commissioned salesman at an auto dealership, earning $18,173.94.  (Tr. 127, 116).  He quit this job due to stress and pressure caused by dealing with people.  (Tr. 54, 56-57; Doc. No.  10, Ex. A. p. 10).

5.      Plaintiff testified that his first contact with the Veterans' Administration since 1969 occurred in mid-1999, when he spoke to a counselor.  (Tr. 81-84). This contact eventually led to reconsideration of his service related disability.  Plaintiff testified that prior to meeting with the VA counselor, he knew nothing about Social Security or VA benefits, and that although he knew something was wrong with him, he had never heard of PTSD.  (Tr. 32, 68, 86).  He attributes his occupational and personal problems since 1969 to PTSD.  (Tr. 51, 53, 56, 61-62).   This contention is substantiated by the report of Thomas B. Vosburgh, M.D., coordinator of the PTSD/Trauma Program for the Albuquerque Veterans Medical Center, who evaluated Plaintiff on July 7, 1999.  In a letter dated August 23, 1999, Dr. Vosburgh stated that Plaintiff suffered from PTSD[4] caused by

---

[3]Plaintiff testified that management didn't like him "stirring things up" in an attempt to get better pay for other workers, and that he had several arguments with the general manager and owner, one of which almost turned into a physical confrontation.  (Tr. 52-54).

[4]"You experience severe and pervasive anxiety, irritability, hypervigilance and insomnia.  You have frequent intrusive memories of traumas despite strenuous efforts to avoid dwelling on or thinking about those events.  Your concentration is impaired.  It is extremely difficult for you to accept supervision.  Your stress tolerance is severely limited."

trauma experienced in the service. He further indicated that this condition had rendered Plaintiff continuously disabled since 1986, despite his employment in 1997-1999, and that he was unemployable. (Doc. No. 10, Ex. A, p. 9). Plaintiff's service-related disability was increased to 100%.[5] (Tr. 29, 32, 70, 87).

## II. Procedural Background

6.      Plaintiff filed an application for Disability Insurance Benefits ("DIB" herein) on July 9, 1999, alleging that he had been disabled since January 15, 1986, as a result problems stemming from his service in Viet Nam, including Post Traumatic Stress Disorder ("PTSD" herein). He alleges an onset of disability date of July 1, 1999, and seeks disability benefits commencing as of December 1999. (Docket No. 10, p. 9). He does not seek cash benefits for January 15, 1986, through October 1997, but asks that this period be declared a "period of disability" under 20 C.F.R. §404.320, thereby extending his date last insured to March 2001.[6] (Docket No. 10, p. 9). *George v. Chater*, 76 F.3d 675, 676 (5th Cir. 1996) (A "period of disability" is excluded from calculation of quarters of coverage required for retaining insured status, thereby extending a claimant's insured status.).

---

[5]In a decision issued September 22, 1999, the VA evaluated Plaintiff's service related disability as follows:

Anatomical loss of left eye: 40% disabling.
Tinnitus: 10% disabling, effective 6/29/99.
Facial scarring: 10% disabling, effective 4/21/99.
Posttraumatic stress disorder (previously rated as neurosis): increased from 10% to 70% ,effective 4/21/99.

(Doc. No. 10, Ex. A, p. 4).

[6]Although not raised in this appeal, Plaintiff argued to the ALJ that his employment from October 1997-June 1999 should be deemed a "trial work period." (Tr. 152). The ALJ determined that Plaintiff's work during this period could not be considered a trial work period, relying on §20 C.F.R. 404.1592(e) (trial work period cannot begin before the month in which an individual files an application for benefits.). I find that the ALJ applied correct legal standards in reaching this conclusion. *Solenberger v. Apfel*, 1999 WL 319081, *8 (D. Kan.).

7.      Plaintiff's application was denied at the administrative review level. A hearing was held

before an administrative law judge ("ALJ" herein) on January 24, 2001. In a decision dated June 1,

2001, the ALJ denied Plaintiff's claim finding that he had not established a continuous period of

disability from the date he was last insured for benefits though a date within twelve months of the

filing of his application for benefits. (Tr. 16). The ALJ found that despite his PTSD, the evidence

did not support a finding that Plaintiff's mental impairment prevented him from filing an application

for DIB within the 12-month limitation period. The Appeals Council declined to review the ALJ

decision dated August 31, 2001.

### III.  Standard of Review

8.      This Court reviews the Commissioner's decision to determine "whether it is supported by

substantial evidence and whether the [Commissioner] applied the correct legal standards." *See*

*Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir. 1994). Substantial evidence while "more than

a mere scintilla," is only "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842

(1971).

### IV.  Analysis

9.      The phrase "period of disability" as used in the regulations and controlling statutes is a term

of art. "It does not mean simply a period during which a person is disabled and not working." *Sprow*

*v. Bowen*, 856 F.2d 207, 208 (9th Cir.1989). A period of disability is a continuous period of time

during which the individual (1) is disabled, (2) meets the special earnings requirements on the day the

period begins, and applicable to this appeal, (3) files an application to establish the "period of

disability" during the period of disability or within 12 months after the disability ends. See §20 C.F.R.

404.320(b) *see also* §42 U.S.C. 416(i)(2). This filing deadline is extended to "36 months if the

failure to file 'was attributable to a physical or mental condition [of the claimant] which rendered him

incapable of executing an application.' " *Fletcher v. Chater*, 916 F.Supp. 1086, 1088 (D. Kan.

1996), citing 42 U.S.C. §416(i)(2)(F)(i).

10.      Assuming without deciding that Plaintiff was disabled during the alleged "period of disability,"

the issues presented are:

>  A.      Whether Plaintiff's disability ended  when he returned to work in November 1997.
>           If so,
>
>  B.      Whether substantial evidence supports the ALJ's determination that Plaintiff failed to
>           establish a mental condition which rendered him incapable of executing an application
>           for disability benefits within 12 months of the end of his disability.

11.      Section 20 C.F.R. 404.1520 sets out the steps utilized in assessing disability, referred to as

the sequential evaluation process. Pursuant to step one of that process, if a claimant is working at

a level constituting substantial gainful activity ("SGA" herein), he or she will not be found disabled

*regardless of medical condition*,  age, education, or work experience. §20 C.F.R. 404.1520(b). It

is undisputed that Plaintiff's work activity from October 1997 through June 1999 constituted SGA.

(Docket No.10, p. 9). Plaintiff's disability, if any, ended when he returned to work in October 1997.

Accordingly, for January 15, 1986, through October 1997 to qualify as a "period of disability,"

Plaintiff would have had to file an application to establish that period of disability no later than

October 1998. *Smith v. Callahan*, 125 F.3d 863, 1997 WL 631597, *2 (10th Cir. Okla.).[7] He did

not do so. Therefore, his application is untimely unless he qualifies for an extension of time under

---

[7]Plaintiff cites to *Hall v. Dep't of Health & Human Servs.,* 1985 WL 13731 (6th Cir. 1985) in an attempt to avoid this filing deadline. The 10th Circuit in *Smith v. Callahan*, *supra* questioned the value of this unpublished decision as legal precedent, and declined to adopt its reasoning.

§42 U.S.C. 416(i)(2)(F)(i), and its implementing regulations, §§20 C.F.R. 404. 320(b)(3) and 404.322.

12.     As previously stated, §42 U.S.C. 416(i)(2)(F)(i) extends the deadline for filing an application for a period of disability to 36 months after a disability ends if the failure to file "was attributable to a physical or mental condition" which renders the applicant "incapable of executing such application." Section 20 C.F.R. 494.320(b)(3) provides:

> . . . *If you were unable to apply* (for a period of disability) within the 12-month period after your period of disability ended *because of a . . . mental condition as described in §404.322*, you may apply not more than 36 months after the month your disability ended. (emphasis added)

Section 20 C.F.R. 404.322 provides a failure to apply ". . . will be considered due to a . . . mental condition if during this time . . . (b) you were mentally incompetent."

13.     In his decision, the ALJ concluded that no evidence presented indicated that Plaintiff was prevented from filing his application in a timely manner due to any mental impairment or similar problem.   "While it is apparent that the (Plaintiff) has had to deal with his PTSD, there is no basis in the file to find that the severity of this impairment was such that the claimant was unable to care for his affairs or was unable to file an application for benefits."  (Tr. 16).   Plaintiff contends that the ALJ erred by failing to link this finding to substantial evidence.

14.     Courts are not permitted to draw factual conclusions on behalf of the ALJ. *Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991), cited in *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).  Pursuant to §42 U.S.C. 405(b) (1) and §20 C.F.R. 404.953, the ALJ is required to discuss the evidence and explain the reasons for his decision.   In support of his conclusion that Plaintiff was not prevented from filing an application for a period of disability within the 12-month limitation, the ALJ cited to Plaintiff's work history,  his reasons for quitting his various jobs, his symptoms of

PTSD, his working conditions which involved no special consideration or special assistance, and his earnings in 1997-1999. (Tr. 14-15).

15.  In *Fletcher v. Chater, supra*, a claimant whose disability for a closed period was undisputed, returned to work on March 24, 1991, and filed an application for DIB on June 23, 1992. Testimony at the hearing indicated that Plaintiff continued to suffer from mental impairments affecting his comprehension until at least August 1991. His claim was denied for failure to file within 12 months of his return to work. The issue of the extension of the filing period was not raised until the matter was before the Appeals Council. At that time the claimant also submitted a letter from a physician stating that he continued to have cognitive deficits, including short term memory, attention span and failure to follow through with instructions. The Appeals Council did not consider these submissions. The District Court reversed the decision and remanded for additional proceedings, holding that the physical or mental impairment standard of §42 U.S.C. 416(i)(2)(F)(i) could not be equated with an inability to perform SGA, for to do so would render the extension granted in statute meaningless.

> "The extension provision comes into play only after a claimant's disability has ended, because the 12-month application period does not start running until the disability period closes. The claimant with a disabling mental impairment has no need for the extension provision."

*Fletcher v. Chater*, 916 F.Supp. at 1089, *quoting Tingus v. Heckler*[8], 569 F.Supp. 1499, 1502-1503 (D. Mass. 1983).

16.  *Fletcher* and *Tingus,* stand for the proposition that an ability to engage in SGA in and of itself does not establish that a claimant is not entitled to the extension provisions of §42 U.S.C.

---

[8]In *Tingus*, the court held that claimant's inability to speak English, illiteracy and lack of awareness of the existence of benefits constituted a mental condition that prevented him from meeting the 12-month deadline.

416(i)(2)(F)(i).  The ALJ has provided little more than this in factual support of his conclusion that Plaintiff was not entitled to the 36-month extension provision.  I find that the ALJ's decision as to the applicability of the extension provisions of §42 U.S.C. 416(i)(2)(F)(i) is not supported by substantial evidence.

## V.  Recommended Disposition

17.     Based on the foregoing I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing be granted, and that this matter be remanded to the Commissioner of Social Security for additional proceedings.  The Commissioner shall specifically address Plaintiff's diagnosis of PTSD and whether that mental impairment rendered Plaintiff incapable of filing an application for DIB.  The Commissioner shall discuss the evidence from Plaintiff's medical care providers, and may seek additional medical evidence.   Plaintiff as well may submit additional evidence.  If the Commissioner determines that Plaintiff is not entitled to the extension provisions §42 U.S.C. 416(i)(2)(F)(i), he shall support that finding by citation to relevant facts contained in the record.  If the Commissioner determines that Plaintiff is entitled to the  extension provisions §42 U.S.C. 416(i)(2)(F)(i), he shall proceed to evaluate Plaintiff's claims pursuant to the sequential evaluation process.

18.     This decision does not dictate a given outcome on remand.  Rather, it assures that correct legal standards will be used in arriving at a decision based on the facts.  *Huston v. Bowen*, 838 F.2d 1125,  1132 (10th Cir. 1988).

**Richard L. Puglisi**
**United States Magistrate Judge**